# COMPTOGRAPH COMPANY *v.* ADDER MACHINE COMPANY.

---

COURTS; PATENTS; ABANDONMENT; ANTICIPATION; RENEWING EXPIRED
MONOPOLY; INFRINGEMENT.

1. A decision that an invention had been abandoned by inaction, rendered by a Federal court, which had before it sufficient facts upon which

to base the same, is of persuasive force in this court, though the evidence has been amplified in the case here. (Citing *Brill* v. *Washington R. & Electric Co.* 30 App. D. C. 255.)

2. An inventor may gratuitously confer the benefits of his invention upon the public either by express declarations or by his conduct, such as acquiescence, with knowledge, in its use by others, or he may forfeit his right as an inventor by a wilful or negligent postponement of his claim. (Citing on the latter point *Hawkins* v. *Ward*, 38 App. D. C. 90.)

3. A corporation's failure to apply for a patent until eight years after its nominally controlling member completed the invention, and a year after a third person, having entered the field, obtained a patent for a like device, the actual dominating member having treated the other member's device with contempt .and having peremptorily directed that nothing be done with it, is an abandonment of the invention which invalidates a patent issued upon an application thereafter made by the corporation. (Distinguishing *McBerty* v. *Cook*, 16 App. D. C. 133.)

4. Patent No. 517,383, dated March 27, 1894, to Hopkins, anticipated the claims in No. 568,021 dated September 22, 1896, to Felt, relating to printing and adding machines, which recite the combination with carrying levers and their latches, of devices for moving the levers into position for carrying from the adding wheel for one digit to that of the next higher order, such devices being partially retracted immediately after thus moving the levers released from the latches to escape re-engagement therewith; and also a cam device for controlling the said devices for moving the levers; a rockshaft with pins; and a hand device or lever whereby such shaft is rocked.

5. Where the patent of the plaintiff in an infringement suit is shown to have been anticipated by one of several patents which are alleged by the defendant as anticipating the same, it is unnecessary to consider the other references.

6. The claims of patent No. 661,121 dated November 6, 1900, to Felt, which relates to type hammers of the printing mechanism of an adding and printing machine, and whose supposed novelty resides in making the hammers which co-operate with the type segments of the printing mechanism in two parts, hinged together by a pivot, then applying the actuating power to the wheel member and putting a stop in the path of movement of such member, so as to arrest it before the striking part reaches the paper,—must, in order to stand, be confined to the structural characteristics of the device in issue, so as not to permit the patentee wrongly to monopolize a general feature for which he enjoyed a monopoly for the statutory period under patent No. 441,233 dated November 25, 1890.

7. The device of the defendant in an infringement suit will not be deemed to have infringed that of the plaintiff, where it differs from the plaintiff's device as much as the latter differs from a prior device, which the plaintiff monopolized for the statutory period under a patent now expired.

No. 2583.   Submitted December 5, 1913.   Decided February 2, 1914.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing its bill filed for the infringement of certain patents.     *Affirmed.*

The facts are stated in the opinion.

*Mr. H. N. Low, Mr. John W. Munday, Mr. Henry Love Clarke,* and *Mr. Eugene H. Garnett* for the appellant.

*Mr. J. B. Hayward, Mr. Drury W. Cooper,* and *Messrs. Church & Church* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decree in the supreme court of the District dismissing appellant's bill for the infringement of certain letters patent relating to adding machines. Three patents are here involved: Felt patent No. 586,021, issued September 22, 1896; Felt patent No. 628,176, issued July 4, 1899; Felt patent No. 661,121, issued November 6, 1900.

Both here and in the court below the controversy centered around the tabulator patent No. 628,176, the issue as to the other two being submitted upon the briefs. We will therefore first consider this patent. Three claims are involved, claims 1, 2, and 4, which read as follows:

"1. The combination with the printing mechanism adapted to print two or more characters side by side, of a laterally movable paper carriage, devices for feeding the paper longitudinally mounted in said carriage, and automatic mechanism acting in

any position of the carriage to actuate said feeding devices in the line-spacing movements, substantially as specified.

"2. The combination with a series of type arranged to print side-by-side devices for impressing the paper upon the type, a laterally movable paper carriage adapted to position the paper for the different columns, feed rolls for moving the paper longitudinally past the type, and means for actuating said rolls, substantially as specified."

"4. The tabulating machine having in combination a laterally movable paper carriage, means for feeding the paper vertically in any position of the carriage, and mechanism for shifting the carriage laterally the width of a column space, substantially as specified."

The controversy here, as stated in appellant's brief, relates "to the feature of providing an adding machine with a laterally movable paper carriage adapted to handle wide sheets of paper, and to print and add thereon a plurality of parallel columns of numbers, instead of just printing a single column of numbers on a long, narrow, continuous roll of paper." Mr. Felt was the inventor of the computing machine called the "Comptometer," the patent upon which was issued in 1887. In 1888 he developed from his Comptometer printing-adding machines known as the Roll-Paper Comptographs, which added and printed the numbers in a list on a continuous roll of narrow paper. One of these machines was sold and delivered to a bank in Pittsburg in 1889. Prior to 1889 Mr. Felt had been in partnership with a Mr. Robert Tarrant and a Mr. De Berard, Mr. Felt being the inventor and Tarrant the financial backer of the partnership. In 1889 the Felt & Tarrant Manufacturing Company, a corporation, was organized with Mr. Felt as president. The stock was divided as follows: Felt 9/16, Tarrant 6/16, and De Berard 1/16. The indebtedness of $12,000 or $14,000 of the old partnership was assumed by the partners according to their respective interests. The stock of the company was issued in payment for special tools, adding machines, parts of adding machines, and the patents owned by the old Felt & Tarrant partnership. In 1902 the appellant, Comptograph Com-

pany, was incorporated and the Comptograph business of the
Felt & Tarrant Manufacturing Company was turned over to it.

Early in 1890 Mr. Felt completed the full-sized operative tab-
ulator adding machine introduced in evidence as "Felt's 1890
Model." This, appellant insists, was a reduction to practice
of the claims of the tabulator patent now under review, and we
shall assume that this contention is correct. This machine was
operated in the presence of a reporter of the Chicago Tribune,
and an article describing the machine in general terms there-
after appeared in that paper. It appears that when Mr. Felt
constructed this machine he hoped to have it accepted by the
United States Census officials, and early in February he person-
ally exhibited it to them. This attempt of Mr. Felt, however,
to have his machine adopted by the Census officials was un-
successful, and it was taken back to Chicago, the headquarters
of the Felt & Tarrant Company. According to Mr. Felt's own
testimony, Mr. Tarrant, while a minority stockholder, abso-
lutely dominated the policy of the corporation. The reason for
this was that he paid all bills of the company and furnished it
quarters in his factory. These conditions remained unchanged
until some time after the application for this patent was filed,
May 31, 1898. In the brief of appellant it is stated: "It is
thus apparent that Tarrant, though only a minority stockholder
in the Felt & Tarrant Company, entirely controlled Felt and
the development of his inventions, and that Felt, being without
money, as we will hereinafter show, and unable to secure any,
was bound to submit to Tarrant's views as to what should be
done with the 1890 invention." Mr. Felt was asked by counsel
for appellant to state the attitude of Mr. Tarrant toward the
1890 machine when it was brought back from the Census Office
at Washington, and answered: "He said I mustn't do anything
more with it, and that what time and money we had must be
devoted entirely to the machines we then had on the market;
namely, the Comptometer and the Comptograph. He seemed to
regard me as merely an inventor who had no business judgment,
and whenever I wanted to talk about the wide-paper machine to
him he treated the subject with contempt, and wouldn't talk

about it." Whatever may have been the personal attitude of Mr. Felt toward this alleged invention, there is no doubt whatever that the attitude of the corporation toward it remained unchanged until some time subsequent to the issuance of the patent to Hiett on April 20, 1897, and the patent to Pike on December 21, 1897. Each of these patents described but did not claim the wide-frame feature of the claims in issue.

Mr. Felt procured a copy of the Hiett patent soon after its issuance, and, while he and a workman by the name of Ziehm testify that *just before* the issuance of this patent they added a sheet-end warning device or alarm on Felt's 1890 model, we are not satisfied that this was done prior to the date of the Hiett patent. Mr. Felt, testifying several years after the event, says that this device was put on while the application therefor "was being prepared *or was pending* in the Patent Office," and, inasmuch as the patent was issued March 16, 1897, he therefore concludes that the work was done prior to the issuance of the Hiett patent. Just why he remembers that the work was done before rather than after the issuance of the patent he does not explain, and the testimony of the witness Ziehm is even more vague and unsatisfactory. Mr. Felt testifies that between the construction of this model in 1890 and the time the patent was applied for, he made several efforts to interest other capital in the machine, and that had he succeeded he would have insisted upon an application being made for this alleged invention. He says that he did not have sufficient funds of his own to apply for a patent. But, even if we accept this statement, it does not appear that the idea of filing an application for his own benefit ever occurred to him, nor does it appear that he attempted to obtain outside aid to that end.

While, as we have seen, the Hiett patent, which fully disclosed the issue herein, came out in April, 1897, Felt's application was not filed until May 31, 1898, and the application was then filed in behalf of the Felt & Tarrant Corporation, to which belonged all of Felt's inventions. In other words, the corporation that for a period of eight years had treated with contempt the alleged invention filed an application covering it

after two other inventors had taken the corporation at its word and incorporated, without claiming, the wide-carriage idea in their own improvements. The expenses of building the 1890 Model were met by Mr. Tarrant and charged to the Felt & Tarrant Company, and the expenses of applying for and obtaining the patent in suit, amounting to $539, were met by the same company. The attitude of the company is further apparent from the fact that six other applications were filed between 1890 and the filing of the present application.

The patent in issue was declared void in *Universal Adding Mach. Co.* v. *Comptograph Co.* (present appellant) 77 C. C. A. 227, 146 Fed. 981. Speaking of the Hiett patent the court said: "Indeed, Felt's only escape from the Hiett patent, as an anticipating device, lies in the claim that though the Felt patent was not applied for until 1898, the idea was conceived and put into process of mechanical development in 1889 and 1890 * * *. Assuming that this concept of the patentee was complete when the patent was exhibited to the Census Office in 1890, so as to be practicable and operative, the machine was sufficiently completed to obtain a patent (if the feature were patentable at all) upon the broad feature claimed." The court found that either the mechanism of 1890 was a mere inoperative and impracticable experiment, and hence supplanted by the Hiett patent, or else, "for the purposes of the broad claims allowed, the mechanism of 1890 was operative and practical, and therefore abandoned or lost through the eight years of inaction that followed."

It is insisted by appellant that as the issues were made in the above case the testimony upon the question of abandonment was not as full as it would otherwise have been, and that in the present case it has been amplified. It does not clearly appear what additional testimony upon this point has been adduced in the present record (*Comptograph Co.* v. *Burroughs Adding Mach. Co.* 37 L.R.A.(N.S.) 821, 105 C. C. A. 533, 183 Fed. 321). It is clear, however, that there were sufficient facts before the court upon which to base its finding, and its decision, therefore, is at least persuasive upon the issue here. *Brill* v. *Washington*

*R. & Electric Co.* 30 App. D. C. 255; *Mast, F. & Co.* v. *Stover Mfg. Co.* 177 U. S. 485, 44 L. ed. 856, 20 Sup. Ct. Rep. 708.

Upon an examination of the present record, we see no escape from the conclusion that this alleged invention was abandoned. It concededly belonged to the Felt & Tarrant Corporation. That corporation was dominated by Mr. Tarrant. His attitude concededly was the attitude of the corporation. After the failure of Mr. Felt to interest the Census Office officials in the device, Mr. Tarrant peremptorily directed that nothing more be done with it; that thereafter all time and money the company had must be devoted entirely to the machines then on the market. And whenever, thereafter, Mr. Felt "wanted to talk about the wide-paper machine to him he treated the subject with contempt." If this was not "a wilful or negligent postponement" of this alleged invention, within the doctrine of *Kendall* v. *Winsor,* 21 How. 322, 16 L. ed. 165; *Consolidated Fruit-Jar Co.* v. *Wright,* 94 U. S. 92, 24 L. ed. 68, and other authorities upon this question, it would be difficult to suppose a set of facts constituting such postponement. While the object of the patent laws is through protection to stimulate inventions, of course the fundamental idea is the benefit to be conferred upon the public. This object is too frequently overlooked by inventors. We have said that they may not withhold their improvements from the public until they may manufacture free from the claims of rival inventors (*Hawkins* v. *Ward,* 38 App. D. C. 90), for such a practice would unduly prolong the monopoly. The law permits, but does not compel, an inventor to apply for a patent. "It is the unquestionable right of every inventor to confer gratuitously the benefits of his ingenuity upon the public, and this he may do either by express declaration or by conduct equally significant with language,—such, for instance, as an acquiescence with full knowledge in the use of his invention by others; or he may forfeit his rights as an inventor by a wilful or negligent postponement of his claims." *Kendall* v. *Winsor,* 21 How. 329, 16 L. ed. 168. Here the invention was complete in 1890. It was deliberately cast aside by its owner, the Felt & Tarrant Corporation. This policy remained unchanged for

a period of eight years, and, meanwhile, other parties had entered the field and exploited the idea exemplified in this device. More than a year elapsed after the issuance of the Hiett patent before the present application was filed. In other words, it is perfectly apparent that the policy of the Felt & Tarrant Company respecting this alleged invention did not change until the idea had been exploited by others sufficiently to convince the company that it had made a mistake. It was then, and not until then, that the company determined to appropriate to itself the entire field for the manufacture of wide-carriage Comptographs. This it could not do. Once having abandoned the alleged invention, it could no more resurrect it than any other dead thing. Thereafter, the Felt & Tarrant Corporation could assert no right in this invention. *Pennock* v. *Dialogue,* 2 Pet. 1, 7 L. ed. 327.

Mr. Felt, individually, may have believed in this alleged invention, and, individually, may have entertained no idea of abandoning it; but his personal views on the subject were subordinated to the views of the dominating member of the corporation, Mr. Tarrant, who determined the policy of that corporation. Had Mr. Felt, when he found that his corporation would do nothing with his invention, applied for a patent for his individual benefit, a different case would have been presented, for courts are always desirous of lending a helping hand to a worthy inventor who has been the victim of adverse circumstances. *McBerty* v. *Cook,* 16 App. D. C. 133. But here the corporation that had in terms abandoned the invention was the party that attempted to resurrect it. We must therefore hold that this patent is void.

We will now examine patent No. 568,021. This patent having been issued September 22, 1896, on an application filed June 14, 1895, expired September 22, 1913. Claims 47, 48, 49, and 52 are here involved. These claims relate to so-called delayed transfer or carrying mechanism. An adding counter contains several adding wheels for units, dimes, dollars, etc., bearing on their peripheries numbers from 0 to 9. When the unit wheel has moved through nine spaces the addition of one unit

brings the numeral "0" to the reading line, and it then becomes necessary to transfer or carry one unit to the dimes wheel that the counter may show 10 instead of 0. The same is true of the dime and dollar wheels. It is this actuation of the wheel of the next higher order, upon the movement of the wheel of the lower order, that is known as the transfer or carrying operation. Claim 47 reads as follows:

"47. The combination with the carrying levers and their latches, of devices for moving the levers into position for carrying, such devices being also retracted partially immediately after thus moving the levers released from the latches to escape reengagement therewith, substantially as specified."

It is contended by appellee that this claim is met in the prior patents to Wythe, No. 445,582, February 3, 1891, and Hopkins, No. 517,383, March 27, 1894, the filing date of the latter patent, being October 4, 1892. An examination of claim 47 discloses three essential elements: First, a lever adapted to move the numeral wheel in a carrying operation; second, a detent to prevent the operation of such lever, and which in turn is controlled by the position of the numeral wheel of the next lower order; and, third, means to restrain the carrying lever from performing its function after it has been tripped by the withdrawal of the detent until the primary actuators have ceased their movements.

Turning to the Hopkins' patent, the carrying levers are clearly shown in Fig. 51 at 354. Their latches are shown at 360. In Fig. 53 the carrying lever is shown in its raised position and locked by the latch 360, which engages pin 361 attached to the lever. The lever was moved to a locked position by the arm 391. There is a partial retraction of this arm after moving the lever as called for by the claims. While the claim ends here, the arm 391, as shown in Fig. 2, has moved to the third position, leaving the carrying lever 354 to engage the numeral arm, thus effecting the carrying operation.

Claim 48 differs from claim 47 only in requiring "a cam device for controlling the movement of said devices for moving the levers." This cam device is found in Fig. 24 of the Hopkins

patent at 378. When this plate is moved it exerts a cam action upon the pin 392a, thereby moving the arm 392 and the shaft 390. Claim 49 refers to the "rockshaft N and its pins." While this rockshaft and pin are not found in the appellee's structure, they are present in that of Hopkins, the rockshaft being there found in Fig. 24 at 390, the pin or arm 391 being mounted upon the shaft. Claim 52 includes an additional element of a "hand device or lever whereby said shaft is rocked." This, too, we fail to find in appellee's structure, but we do find it in both the Hopkins and Wythe structures.

We are clearly of the opinion that these claims were anticipated by the Hopkins patent. It is unnecessary, therefore, to consider the other references.

We now consider patent No. 661,121, which is the narrowest of all and relates to the type hammers of the printing mechanism of the machine. The supposed novelty of the claims resides in making the hammers which co-operate with the type segments of the printing mechanism in two parts, hinged together by a pivot, then applying the actuating power to the wheel member and putting a stop in the path of movement of such member, so as to arrest it before the striking part reaches the paper. The claims are four in number, 37, 38, 39, and 40. 37 and 40 read as follows:

"37. The calculating machine, having type and hammers for pressing the paper against the type, said hammers having hinged heads, made separate from the bodies, actuating springs attached to the heads, and means for arresting the heads before the hammers can make the impressions, substantially as specified."

"40. In a machine for printing numbers, a printing hammer made in two parts and hinged together, one part receiving the actuating power and imparting it to the other, and being itself arrested before the making of the impression, substantially as specified."

Counts 38 and 39 do not differ materially from count 37. In Mr. Felt's specification he directs attention to his prior patents and to the fact that his hammers differ from those pre-

viously shown in that each is made with a head separate from the rest or main body of the hammer. "My object," says his specification, "in this feature is to soften the blow against the type and allow the hammer to drop back a little from the paper immediately after striking, the head being actuated by the spring $H^{14b}$ and being hinged to the same shaft $A^{14}$ which supports the body portion of the hammers, and being also adapted to bear upon the body at $H^{14c}$, and thus to give the body the impulse or motion necessary to carry it against the type, but being itself arrested by a stop rod $H^{14d}$, extending transversely of the series of hammers, before the hammer reaches the paper." In one of Mr. Felt's prior patents, No. 441,233, dated November 25, 1890, he shows a device intended to perform the same function as that performed by the device now in issue. In the specification of the prior patent he says: "Each spring 44 is connected with its appropriate hammer by a piece of straight wire 46, that is passed between the depending teeth of a toothed guidebar 47, and in each straight piece of wire is provided a knot 48 or other suitable stop to engage the toothed guide bar 47 and relieve the hammer from the tension of the spring 44 just before the hammer reaches the end of its stroke, thereby allowing the hammer to yield slightly after delivering its blow, and thus present it from obstructing the subsequent movements of the type head and ribbon." In their brief, counsel for appellee admit that this device "relieved the printing pressure on the hammer as soon as the hammer blow was struck," but contend that "it did not insure the hammer dropping back positively enough, as soon as its blow was delivered, to fully relieve all pressure upon the paper that had been printed upon." Counsel therefore suggest that the structure now in issue was conceived "to accomplish this more definite action." In other words, counsel take the position that, notwithstanding the enjoyment by Mr. Felt of a monopoly of this feature for the statutory period, he is nevertheless now entitled broadly to monopolize the same feature during the life of his present patent. This clearly he may not do. Unless, therefore, these claims are to be limited to the structural characteristics of the

device of the issue—in other words, to the specific form of the means employed—they must fall. Since appellee's device differs from appellant's as much as appellant's differs from his prior device, we conclude that there has been no infringement of these claims.

The decree will therefore be affirmed, with costs.

*Affirmed.*

A motion by the appellant for a reargument was overruled March 2, 1914.